William Charles Tanenbaum (*Pro Hac Vice to be submitted*)
9701 Wilshire Blvd., #1000
Beverly Hills, CA 90212
Telephone: 310.628.0989
Facsimile: 310.859.1960
tanenbaum@tanenbaumlegal.com

Steven R. Glauser (15607)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
sglauser@parrbrown.com

*Attorneys for Dream Catchers International, Inc. and Christopher Volek*

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DREAM CATCHERS INTERNATIONAL, INC., a Georgia Corporation; CHRISTOPHER VOLEK, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>DONNA BELLA OPCO, LLC, a Utah limited liability company; and DOES 1 through 30, inclusive,<br>Defendants. | **COMPLAINT**<br><br>Tier 3<br><br>Case No. 2:23-cv-00088-HCN<br><br>Judge Howard C. Nielson, Jr. |

Plaintiffs DREAM CATCHERS INTERNATIONAL, INC., a Georgia corporation

("DCI"), and CHRISTOPHER VOLEK, an individual, ("VOLEK") ( DCI and VOLEK,

collectively as "Plaintiffs"), do hereby complain against defendant, DONNA BELLA OPCO, LLC, a Utah limited liability company (collectively "Defendants") for the causes of action alleged as follows:

## I. VENUE AND JURISDICTION

1. Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331, this court has original jurisdiction over this action as Plaintiffs are asserting claims with respect to federal trademark laws, including 15 U.S.C. § 1114(1)(a-b), 15 U.S.C. § 1117, 15 U.S.C. § 1118, 15 U.S.C. § 1125(a)(1)(A-B) , 15 U.S.C. § 1125(c).

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of facts.

3. Venue is proper in the District of Utah under 28 U.S.C. §1391(b) and (c) because the events or omissions giving rise to these claims occurred in this district and the defendants regularly conduct business in this district.

4. On information and belief, Defendants are incorporated in Utah, have their principle places of business in Salt Lake City, and also have sufficient contacts with this district subjecting Defendants to the personal jurisdiction of this court.

## II. THE PARTIES

5. Plaintiff Dream Catchers International, Inc., is a corporation duly organized and existing under the laws of the State of Georgia, with its principal places of business at 361 E. Exchange Parkway, Allen, Texas 75002 (hereafter "Plaintiff DCI" or "DCI"). <u>]DCI has established a reputation both internationally and domestically for manufacturing and selling the world's best human hair extensions</u>.

6. Plaintiff CHRIS VOLEK is an individual, with his principal places of business

2

located at 361 E. Exchange Parkway, Allen, Texas 75002 (hereafter "Plaintiff VOLEK" or "VOLEK"). CHRIS VOLEK is the Chief Executive Officer and owner of DCI (VOLEK and DCI collectively are referred to as "Plaintiffs")

7. In or about 2006, VOLEK filed for ownership of the trademark "DREAM CATCHERS." VOLEK owns the DREAM CATCHERS trademark, Registration Number of 3674581, in "IC 026," for goods and services in "Hair extensions."

8. The DREAM CATCHERS trademark is famous and, since the trademark has been claimed for over 10 years, is incontestable.

9. On information and belief, BIG IP OPCO, LLC, a Utah Limited Liability Company, has its principle place of business located at 631 North 400 West Salt Lake City, Utah 84103, duly licensed to do business as in the State of Utah ("BIG") is the registered owner of the trademark "DONNA BELLA," with a Registration Number of 5226009. .

10. Defendant DONNA BELLA, OPCO, LLC, is a Utah Limited Liability Company, has its principle place of business located at the same location as BIG, located at 631 North 400 West Salt Lake City, Utah 84103, and is duly licensed to do business in the State of Utah ("DONNA" or "Defendant DONNA").

11. On information and belief, BIG owns, controls, receives the benefit of DONNA.

12. Plaintiffs allege additional Defendants Does 1-30 as individuals and entities yet unidentified and Plaintiffs will amend this Complaint with their names and identifying information when discovered.

13. Plaintiffs are informed and believe that each Defendant was the agent, employee, partner, co-conspirator, or other authorized representative of the other, and, in committing the

3

acts and omissions alleged hereinafter, were acting within the scope of their agency, employment, partnership, conspiracy, or other authorized representation.  Whenever and wherever reference is made in this complaint to any acts of Defendants, such allegations and references shall also be deemed to mean the acts of each Defendant acting individually, jointly, or severally.

**III.     INDEX OF EXHIBITS**

14. The following exhibits are true and correct copies of what they purport to be:

15. <u>Exhibit 1</u> – Google Search on August 25, 2022, for "dreamcatchers paris hilton" – Third Listed hit on the resulting google webpage is this link: https://donnabellahair.com ("DONNA Website").

16. <u>Exhibit 2</u> – March 15, 2022, Announcement on the DONNA Website "Paris Launches Hair Extension Line – Dreamcatchers" with "Shop Now" button.

17. <u>Exhibit 3</u> - Red Circles on Exhibit 2 circling unconsented DCI trademarks and intellectual property being displayed on the DONNA Website, followed by a "Shop Now" button.

18. <u>Exhibit 4</u> – Defendants' "Shop Now" button redirects consumers to purchase "Donna Bella" hair extensions at "donnabellahair.com/pages/shop".

19. <u>Exhibit 5</u> – The "Dream Catchers" trademark in IC 026 "hair extensions," which is both incontestable and famous.

20. <u>Exhibit 6</u> – "Donna Bella" trademark in IC 026 "hair extensions," owned by BIG.

21. <u>Exhibit 7</u> – "Donna Bella Hair Extensions" Three (3) Samples - Hair Quality

Technical Report, Grades: D-/F, D+, D+.

22. <u>Exhibit 8</u> – "Dream Catchers Hair Extensions" Four (4) Samples – Hair Quality Technical Report, Grades: A, A, A, A.

## IV. NATURE OF THE CASE - "PASSING OFF" OF INFERIOR GOODS THROUGH TRADEMARK INFRINGEMENT

23. The real human hair extensions market is highly specialized. Providing high-quality, consistent hair extensions is not common. The quality of the extensions available in the marketplace varies widely. Many brands offer mixed-quality hair extensions that readily tangle within weeks of wear. See <u>Exhibit 7</u>, Hair Quality Report "Donna Bella Hair Extensions. Frequently, brands like DONNA offer inferior extensions by spoiling their overall quality by mixing and including damaged, cheaper, lower quality hair into their hair extensions products. See <u>Exhibit 7</u>. Prior to initiating this lawsuit, Plaintiff has conducted scientific testing of DONNA's hair extensions and has confirmed that the hair that was offered on DONNA's website was and is riddled with breakage, stripped, and damaged. See <u>Exhibit 7</u>.

24. Since 2006, DCI has been selling top-of-the-line hair extensions in the beauty supply industry domestically and internationally (the "Hair Extension Industry"). See <u>Exhibit 8</u>. DCI at all times conducts scientific testing to ensure that its hair extensions are in fact truly full cuticle intact and of the highest quality available on the market. See <u>Exhibit 8</u>, Dream Catchers Hair Quality Report. DCI has invested substantial time, effort, and financial resources promoting its DREAM CATCHERS mark in connection with the marketing and sale of its superior hair extensions.

25. DCI has also invested substantial time, effort, and financial resources to follow

5

through on its foundational principle to market uncompromisingly consistent highest-quality hair extensions.  See Exhibit 8.

26. DCI's hard work and diligence have garnered a world-renowned reputation for excellence in hair extensions for its brand, DREAM CATCHERS.

27. DCI and its brand DREAM CATCHERS have established this reputation by never selling or allowing the sale under its trademark and brand "DREAM CATCHERS" of anything less than the finest quality hair in accord with its uncompromising standards.

28. Through widespread public acceptance and recognition of DREAM CATCHERS' excellence within the Hair Extension Industry, the DREAM CATCHERS mark has become a valuable asset to DCI.

29. On information and belief, from March 15, 2022, through August 25, 2022 (the "Infringement Period"), Defendants used the DREAM CATCHERS mark and VOLEK's name to sell their inferior hair extensions on the DONNA Website.  See Exhibit 8, Donna's Hair Extensions.

30. Defendants own the DONNA Website.

31. DONNA offers lower quality hair extensions than DREAM CATCHERS.

32. On information and belief, during the Infringement Period, Defendants directed traffic to the DONNA Webpage by using the DREAM CATCHERS mark and VOLEK's name on their Website just above and along with a "Shop Now" button. See Exhibits 1-4.

33. By directing Google searchers to its website using DREAM CATCHERS trademark, then directing such consumers to purchase DONNA's products using DREAM CATCHERS' property, DONNA has profited off DREAM CATCHER's reputation and good

will by misappropriating the DREAM CATCHERS trademark, publishing it on their website to sell their inferior products (Exhibit 7), diminishing the value of the DREAM CATCHERS trademark by associating their lower quality hair extensions instead of DREAM CATCHERS' excellent and exceptional hair extensions (Exhibit 8).

34. Plaintiffs never gave Defendants consent of any kind consent or permission to use Plaintiffs' property on the DONNA Website.

35. On information and belief, Defendants' misrepresentations diverted sales from DCI and damaged the DREAM CATCHERS brand and goodwill. See Exhibits 1-4.

36. Without DCI's or VOLEK's consent, throughout the Infringement Period, Defendants used the DREAM CATCHERS mark in connection with the sale, offering for sale, distribution, and advertising of their inferior hair extensions. See Exhibit 7.

37. Defendants engaged in its infringing activity with full actual knowledge of DCI and knowledge of DCI's ownership of the DREAM CATCHERS trademark.

38. Defendants' actions are likely to mislead the public into concluding that its inferior hair extensions originate with or are authorized by DCI and/or DREAM CATCHERS, which will damage both DCI, its DREAM CATCHERS brand, and the public. DCI has no control over the quality of hair extensions sold by Defendants and because of the confusion caused by Defendants, DCI has lost control over its valuable goodwill.

39. Upon information and belief, Defendants advertised and offered their inferior hair extensions for sale using the DREAM CATCHERS mark with the intention of misleading, deceiving, or confusing consumers as to the origin of its hair extensions and of trading on DCI and DREAM CATCHERS' reputation and goodwill. Defendants' use of DREAM CATCHERS

7

mark constitutes willful, deliberate, and intentional trademark infringement.

40. Defendants' unauthorized use of the DREAM CATCHERS mark in interstate commerce as described above constitutes trademark infringement and unfair competition under 15 U.S.C. § 1114, as well as 15 U.S.C. § 1125 and has caused consumer confusion, mistake, and/or deception.

41. Defendants' unauthorized marketing and sale of its inferior hair extensions through the DONNA Website in interstate commerce using the DREAM CATCHERS mark constitutes a use of a false designation of origin or false representation that wrongfully and falsely designates Defendants' inferior hair extensions as originating from or connected with DCI and DREAM CATCHERS in violation of 15 U.S.C. § 1125(a). The actions of Defendants as alleged herein constitute intentional, willful, knowing, and deliberate violations.

42. As a direct and proximate result of Defendants' trademark infringement and acts of unfair competition, DCI has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendants have and will continue to unfairly acquire income, profits, and goodwill.

## FIRST CAUSE OF ACTION FOR TRADEMARK INFRINGEMENT
**(Against all Defendants)**

43. Plaintiffs reallege and incorporate all prior paragraphs as though individually alleged herein.

44. VOLEK and DCI own the mark, DREAM CATCHERS.

45. Plaintiffs never gave consent to Defendants to use the DREAM CATCHERS mark nor use VOLEK's name on their websites for any purpose.

46.     Thereby Defendants' use of the DREAM CATCHERS mark and VOLEK's name on the DONNA Website was without consent.

47.     Defendants used Plaintiffs' trademark DREAM CATCHERS on their DONNA Website. Such use was unauthorized.

48.     Defendants' unauthorized use of Plaintiffs' trademark DREAM CATCHERS on their DONNA Website caused Defendants' inferior product to be offered and sold on the Internet, a channel and instrumentality of interstate commerce.

49.     The type of goods being provided by Defendants and Plaintiffs is the same. DONNA is a hair extensions brand. Defendants use the DONNA Website to sell hair extensions. DCI sells hair extensions under its known mark, DREAM CATCHERS.

50.     The manner of Defendants' use of DREAM CATCHERS on the DONNA Website to sell DONNA's hair extensions foreseeably caused confusion in the marketplace. Defendants, and each of them, diverted sales away from Plaintiffs by placing the "Shop Now" button on the same page and in proximity to the DREAM CATCHERS name on the DONNA Webpage at "donnabellahair.com/pages/shop".  See Exhibits 1-4.

51.     Despite the fact that Plaintiff's trademark "DREAM CATCHERS" was registered with the USPTO for "Hair Extensions," Defendants did sell their inferior hair extensions products at the webpage URL "donnabellahair.com/pages/shop" through the improper use of Plaintiffs' mark with the intention that purchasers would be deceived into thinking that purchasers were purchasing DREAM CATCHERS.  See Exhibit 5, Trademark Registration USPTO, "DREAM CATCHERS" IC 026, Hair extensions.

52.     Defendants' sale of their inferior hair extensions using Plaintiffs' DREAM

CATCHERS mark damaged the goodwill in the "DREAM CATCHERS" brand.

53. Plaintiffs claim all remedies for infringement pursuant to 15 U.S.C. § 1114 (1)(a-b).

54. Plaintiffs further claim all remedies and damages pursuant to 15 U.S.C. § 1117 et seq., including, but not limited to, Defendants' profits, Plaintiffs' actual damages, treble damages, penalties, enhancements, costs of suit, and attorneys' fees.

55. Plaintiff further claims injunctive relief pursuant to the 15 U.S.C. § 1116.

56. Plaintiff further claims all remedies and relief pursuant to the 15 U.S.C. § 1125 for dilution, tarnishment, and blurring.

**SECOND CAUSE OF ACTION FOR FALSE PROMOTION (15 U.S.C. § 1125(a)(1)(B))**

**(Against all Defendants)**

57. Plaintiffs realleges and incorporates all prior paragraphs as though individually alleged here.

58. Plaintiffs have been harmed by the misleading statements in the exhibits because consumers believe after reading the statements that they are purchasing Plaintiffs' high-quality products when in fact they are purchasing inferior lower quality products made by Defendants.

59. Defendants intentionally posted on March 15, 2022, and placed an inaccurate date of "**March 15, 2022**" and "**March 15**" on the their website in conjunction with the statement "**It was announced today** that Paris Hilton has launched her signature DreamCatchers European hair extensions a the annual Chicago Midwest Beauty Show in Rosemont." There was no such announcement on March 15, 2022, and as such the statement as presented on Defendant's

website is <u>literally false</u>. Further, the <u>literal falsehood</u> was designed and intended to drive traffic and sales to Defendant through the "Shop Now" button placed after the literally false statement.

60. Defendants made the literally false statements in conjunction with a "Shop Now" button intended and designed to divert sales from DCI and as such the actions were willful and with mal intent. Defendants then sold inferior product to those deceived further damaging the DREAM CATCHERS brand and good will. The "Shop Now" brought those deceived to the URL "donnabellahair.com/pages/shop" where the improper sales occurred.

61. The falsehoods were intended to deceive the public and substantial portion of the public was so deceived as evidenced by complaints received by DCI related to the deceptions of Defendants.

62. Defendants should be enjoined from making further statements of this nature and should be required now and forever to remove any and all references to DREAM CATHCHERS which serves no purpose but to mislead.

63. Injunction, preliminary injunction, and/or TRO will not harm Defendants in any way, while granting such an injunction will benefit Plaintiffs by preventing confusion, brand tarnishment, loss of goodwill, and loss of sales.

64. Plaintiff alleges on information and belief, and on such information and belief and according to proof alleges that Plaintiffs have lost 1000s of sales based on the language and tactics used by Defendants and that the total amount of damages in lost revenue and good will to be determined at time of trial.

65. Plaintiff seeks, damages, treble damages, attorney fees, and costs of suit.

**THIRD CAUSE OF ACTION FOR DECLATORY RELIEF**

**(Against all Defendants)**

66. Plaintiffs realleges and incorporates all prior paragraphs as though individually alleged here.

67. Defendants seek to improperly and illegally use the Plaintiffs' trademark "DREAM CATCHERS" to create confusion and to imply endorsement or sponsorship of its products, company, and/or activities.

68. Based on the preceding allegations, there exists between the parties a substantial controversy of immediacy and reality to warrant declaratory relief. There is no good faith need for Defendants to seek to pursue use of Plaintiffs' trademark except for nefarious purposes.

69. The court should exercise its discretion, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, to issue a declaratory judgment in this action because Plaintiffs are informed and believe, and based on such information and belief allege that Defendants' motivation in utilizing Plaintiffs' trademarks is to create confusion, unreasonably restrain and manipulate trade, and improperly divert consumers and steal revenues from Plaintiffs.

70. Thus the court should grant Plaintiffs declaratory judgment that Defendants have no right to use the "DREAM CATCHERS" trademark to sell, market, or promote their inferior hair extensions products and that the mark is the exclusive property of Plaintiffs for purposes of selling hair extensions.

**CLAIM FOR RELIEF**

Plaintiffs prays this Court enter judgment as follows:

1. Plaintiff be awarded actual damages and disgorgement of all profits which have accrued in Defendants for infringement of the "DREAM CATCHERS" trademark;

2. Plaintiff be allowed all remedies, penalty enhancements, elections, actual damages, treble damages, costs of suit and reasonable attorneys fees under all theories including 15 U.S.C. § 1117 et seq.;

3. For injunctions under all theories including for false promotion pursuant to 15 U.S.C. § 1125, et. seq.;

4. For declaratory judgment and a declaration of rights between the parties that Plaintiffs own the exclusive right to market and sell hair extensions under the "DREAM CATCHERS" trademark exclusively, and that Defendants have no right to sell, promote, market, or deceive others into purchasing hair extensions through the use of the "DREAM CATCHERS" trademark;

5. Attorney fees and costs of suit;

6. Such further relief as the Court deems proper.

DATED this 2nd day of February, 2023.

                LAW OFFICES OF WILLIAM CHARLES TANENBAUM, ESQ.

                /s/ *William C. Tanenbaum*
                William Charles Tanenbaum
                Steven R. Glauser
                *Attorneys for Dream Catchers International, Inc.*
                *and Christopher Volek*

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby requests a jury trial.

DATED this 2nd day of February, 2023.

                LAW OFFICES OF WILLIAM CHARLES TANENBAUM, ESQ.

 /s/  *William C. Tanenbaum*
William Charles Tanenbaum
Steven R. Glauser
*Attorneys for Dream Catchers International, Inc. and Christopher Volek*